UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES LOCKREM Jr., a married individual,<br><br>    Claimant,<br><br>vs.<br><br>JEREMY SMITH, AND THE UNITED STATES FOREST SERVICE,<br>an agency of the United States Government,<br><br>    Defendants. | NO.<br><br>COMPLAINT FOR DAMAGES<br><br>JURY DEMAND |

COMES NOW, plaintiff, James Lockrem Jr., by and through his undersigned attorneys, Robert D. Butler, of the Law Offices of Robert D. Butler and Thomas H. Fryer, of the Law Offices of Tario & Associates, P.S., and for his complaint states as follows:

## THE PARTIES

1.2 The plaintiff, James Lockrem Jr., was at all times relevant hereto, a resident of the Skagit County, Washington.

1.2 Defendant, Jeremy Smith is believed and therefore alleged to reside in Washington State.

1.3 Defendant, Jeremy Smith, was at all times relevant, an employee of defendant, United States Forest Service, an agency of the United States.

COMPLAINT FOR DAMAGES
Lockrem v. Smith
Page 1 of 6

Tario & Associates, P.S.
119 N. Commercial Street, Suite 1000
Bellingham, WA 98225
360-671-8500
FAX 360-733-7092

## II. JURISDICTION AND VENUE

2.1 This Court has jurisdiction over this action pursuant to the Federal Tort Claims Act, 28 U.S.C. 1346, 28 U.S.C. 2674.

2.2 Venue is based upon 28 U.S.C. 1391 and 28 U.S.C. 128(b) and is proper in this Court in that all acts complained of occurred in Whatcom County, Washington.

2.4 The plaintiff has previously filed and served the relevant Notice of Claim as attached as Exhibit 1, to defendant, United States Forest Service and more than 120 days have elapsed.

## III. FACTS

3.1 On or about May 25, 2008, plaintiff, James Lockrem, Jr., was camping with his family in the Baker Lake area of Whatcom County, Washington and located within the Snoqualmie National Forest.

3.2 The defendant, Jeremy Smith, was at that time employed by the United States Forest Service in the capacity of a Park Ranger authorized to enforce the law of the State of Washington and the United States.

3.3 On or about May 25, 2008, the defendant, Jeremy Smith, had occasion to contact James Lockrem, Jr. and his family at the family campsite.

3.5 Based on his contact with the Lockrem family, defendant Jeremy Smith elected to arrest and take plaintiff James Lockrem, Jr.'s younger brother into custody for an outstanding warrant issued by Whatcom County District Court for the younger brother's failure to appear in court for an outstanding misdemeanor offense.

3.6 Prior to arriving at the Lockrem campsite to affect the arrest, defendant Jeremy Smith requested Deputy Freeman, a Sheriff's Deputy with the Whatcom County Sheriff's Office who was on duty in the area to serve as a backup officer for the arrest.

3.7 After arresting the younger brother, plaintiff's father and the Deputy engaged in a physical confrontation.

COMPLAINT FOR DAMAGES
Lockrem v. Smith
Page 2 of 6

Tario & Associates, P.S.
119 N. Commercial Street, Suite 1000
Bellingham, WA 98225
360-671-8500
FAX 360-733-7092

3.8  In the course of the physical confrontation between the plaintiff's father and Deputy Freeman, Deputy Freeman's canine partner "Deuce" was released from Deputy Freeman's patrol vehicle when a button triggering the remote release of the dog was accidentally activated.

3.9  Canine Deuce was a large German Sheppard dog.

3.10  Canine Deuce ran from the Deputy's patrol vehicle which was parked some distance from and out of the line of vision of the plaintiff, James Lockrem, Jr.

3.11  The dog ran towards the general location of the plaintiff, the plaintiff's father and Deputy Freeman who were still engaged in the physical confrontation.

3.12  At no time following the dog's release did Deputy Freeman or defendant Jeremy Smith announce that the dog belonged to Deputy Freeman and was being used in an official capacity.

3.13  Fearing the dog would either bite Deputy Freeman, his father, other members of his family, or the family's dog, plaintiff James Lockrem, Jr., grabbed onto Deuce's collar and maintained control of Duce by use of his collar and pulled Deuce away from the physical confrontation.

3.14  Defendant Smith then ordered, in his capacity as a law enforcement officer for plaintiff to release Deuce.

3.15  Upon his command, plaintiff James Lockrem, Jr., released the dog.

3.16  The dog then immediately bit into the plaintiff, James Lockrem, Jr. and continued to bite him.

3.17  The defendant, Jeremy Smith, stood over plaintiff, James Lockrem, Jr. and placed him under arrest by ordering him to get to the ground and demanding that he place his hands behind his back so he could be handcuffed. While he was ordering the plaintiff to do this, the dog was continuing to bite the plaintiff.

3.18  The plaintiff, James Lockrem, Jr., was unable to keep his hands behind his back while lying prone on the ground because the dog was biting him and pulling his arm out of the position required for him to be handcuffed.

3.19  The plaintiff was repeatedly asking for help from defendant Jeremy Smith to get the dog off of him. Defendant Jeremy Smith did nothing to assist plaintiff or make any effort to stop the actions of the dog.

3.20  At no time during these events did plaintiff, James Lockrem, Jr., know the dog that was biting him was a police dog and belonged to Deputy Freeman.

COMPLAINT FOR DAMAGES
Lockrem v. Smith
Page 3 of 6

Tario & Associates, P.S.
119 N. Commercial Street, Suite 1000
Bellingham, WA 98225
360-671-8500
FAX 360-733-7092

3.21  The plaintiff, James Lockrem, Jr., sustained immediate injuries to his arm and was brought to the Skagit Valley Hospital Emergency Room where he received medical evaluation and treatment.

3.22  Since May 25, 2008, the plaintiff has received ongoing medical treatment and has experience great pain, suffering, and disfigurement because of his injuries.

### IV. CAUSE OF ACTION, NEGLIGENCE

4.1  At all times mentioned herein, defendant Jeremy Smith was employed by the United States Forest Service as a law enforcement officer, duly authorized to enforce the laws of the State of Washington and the United States.

4.2  Defendant, Jeremy Smith, had a duty of care owed to the plaintiff, James Lockrem, Jr., to arrest James Lockrem, Jr. in a manner that did not result in physical injury. Defendant, Jeremy Smith breached that duty when he ordered the plaintiff to release the dog and when he ordered the plaintiff to get to the ground so that he could be handcuffed, thus allowing the dog to continue to bite and injure the plaintiff.

4.3  By breaching said duty, the defendant Jeremy Smith failed to exercise ordinary care in as much as a reasonably prudent law enforcement officer would not have ordered the plaintiff to release the dog and ordered the plaintiff to the ground under similar circumstances.

### V. PROXIMATE CAUSE

5.1  The damages as described below, which plaintiff, James Lockrem, Jr. has suffered and will suffer in the future were proximately caused by the aforesaid negligence of the defendant, Jeremy Smith.

### VI. RESPONDEAT SUPERIOR

6.1  At the time of the event described above, Jeremy Smith was acting within the course and scope of his employment with the United States Forest Service, and, accordingly, the United States Forest Service, as the employer of Jeremy Smith,

COMPLAINT FOR DAMAGES
Lockrem v. Smith
Page 4 of 6

Tario & Associates, P.S.
119 N. Commercial Street, Suite 1000
Bellingham, WA 98225
360-671-8500
FAX 360-733-7092

is vicariously liable to plaintiff James Lockrem, Jr., under the doctrine known as *Respondeat Superior*, for the damages suffered by the plaintiff, James Lockrem, Jr.,

### VII. INJURIES / ECONOMIC LOSS

7.1   As a direct and proximate result of the negligence of defendant, Jeremy Smith, as described above, plaintiff, James Lockrem, Jr. has suffered serious injuries which have required medical diagnosis, as well as treatment, and which may require medical treatment in the future. As a consequence thereof, James Lockrem, Jr. has suffered and may continue to suffer economic loss in an amount to be proven at trial.

### VIII. LOST EARNINGS

8.1   As a direct and proximate result of the negligence of defendant, Jeremy Smith, as aforesaid, plaintiff James Lockrem, Jr., was unable to earn as much income from his regular employment as he would otherwise have earned and thus, suffered additional economic loss in an amount to be proven at trial.

### IX. GENERAL DAMAGES

9.1   As a further direct and proximate result of the aforementioned negligence on the part of defendant, Jeremy Smith, plaintiff, James Lockrem, Jr. has suffered and will suffer in the future general damages, including pain and suffering of both a physical and psychological nature.

Wherefore, having set forth his complaint herein, plaintiff, James Lockrem, Jr., prays for judgment against defendants Jeremy Smith and the United States Forest Service jointly and severally as follows:

COMPLAINT FOR DAMAGES
Lockrem v. Smith
Page 5 of 6

Tario & Associates, P.S.
119 N. Commercial Street, Suite 1000
Bellingham, WA 98225
360-671-8500
FAX 360-733-7092

1. For monetary damages in an amount according to proof to compensate him for the economic loss for medical expenses, both past and future, necessary to diagnose and treat his injuries;

2. For monetary damages in an amount according to proof to compensate him for his past lost earnings;

3. For monetary damages in an amount according to proof to compensate him for his general damages, both past and future, including, but not limited to, his general damages for his pain and suffering, both physical and psychological; and

4. For any other relief that the Court deems just and equitable including costs and attorney's fees incurred by the plaintiff.

Dated this 24th day of May, 2010.

s/ Robert D. Butler
Robert D. Butler, WSBA # 22475
Attorney for Plaintiff
The Law Offices of Robert D. Butler
103 E. Holly Street, Suite 512
Bellingham, WA 98225
Telephone: (360) 734-3448
Fax: (360) 734-7975
Email: admin@rdbutlerlaw.com

s/ Thomas H. Fryer
Thomas H. Fryer, WSBA #22955
Attorney for Plaintiff
Tario & Associates PS
119 N. Commercial, Suite 1000
Bellingham, WA 98225
Telephone: (360) 671-8500
Fax: (360) 733-7092
Email: tfryer@tariolaw.com

COMPLAINT FOR DAMAGES
Lockrem v. Smith
Page 6 of 6

Tario & Associates, P.S.
119 N. Commercial Street, Suite 1000
Bellingham, WA 98225
360-671-8500
FAX 360-733-7092

# THE LAW OFFICES OF
# ROBERT D. BUTLER

October 9, 2009

US Forest Service
810 State Route 20
Sedro Woolley, WA 98284

To Whom it May Concern;

In supplement to Claimant Lockrem Jr.'s Claim For Damages, attached please find:

**EXHIBIT A**:  US Forest Service J. Smith's written report consisting of 4 pages

**EXHIBIT B**:  A CD video of the event recorded by citizen witness Samson Gardner

## SUPPLEMENTAL ANSWER QUESTION # 2

Claimant James Lockrem Junior resides at 830 Chester Road Sedro Woolley, WA 98284

Claimant is represented by Attorneys Thomas Fryer and Robert Butler.

Respective Contact information:

Thomas Fryer
Tario and Associates
119 N. Commercial St.
Suite 1000
Bellingham, WA 98225
ph: 360-671-8500
fax: 360-733-7092
email: thfryer_tariolaw@qwest.net

Robert D. Butler
Law Offices of Robert D. Butler
103 E. Holly
Suite 512
Bellingham, WA 98225
ph. 360-734-3448
Fax 360-734-7975
email bob@rdbutlerlaw.com

TORT CLAIM SECOND SHEET - PAGE 1
092G2110.200

EXHIBIT 1. PAGE 1

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: US FOREST SERVICE | 2. Name, address of claimant, and claimant's personal representative, if any. (See instructions on reverse). Number, Street, City, State and Zip code. James Lockrem Jr. Claimant. See Attached for detail |
|---|---|

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH 12/17/▓ | 5. MARITAL STATUS Married | 6. DATE AND DAY OF ACCIDENT May 25, 2008 | 7. TIME (A.M. OR P.M.) approx. 6:30 PM |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

LOCATION: near mile post 23 on Forest Road 1152 in the Mount Baker Snoqualmie National Forest, Whatcom County, Washington State.

Officer J. Smith Badge # 10A1653 was the responding officer and person responsible for the injury to Claimant.
SEE ATTACHED for: narrative basis of claim as well as Exhibit (A) Smith report and Exhibit (B) Video of event and injury

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).
N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).
N/A

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Claimant sustained substantial personal injury to his right arm (bicept area). The injury has left permenant loss of function and disfigurement. Claimant suffered pain and suffering at the time of the event followed by numerous painful medical procedures over the following months. Claimant suffered loss of income as a result of the injury.

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| The event was captured on video which is included with this claim form. All the witnesses on the video are available. The video was taken by Samson Garner | Samson Garner: 1221 East Vernon, Burlington, WA 98223 360-661-6504 |

12. (See instructions on reverse). **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| N/A | 1.25 million dollars | N/A | 1.25 million dollars |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). *[signature]* | 13b. PHONE NUMBER OF PERSON SIGNING FORM 360-840-3374 | 14. DATE OF SIGNATURE Oct. 2, 2009 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT 1 PAGE 2

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |
| 15. Do you carry accident insurance? ☐ Yes  If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number  ☒ No |
| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes  ☒ No    17. If deductible, state amount. |
| 18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts). <br> N/A |
| 19. Do you carry public liability and property damage insurance? ☐ Yes  If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☒ No |

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a seperat claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSON INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDEN THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WIT **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, nature and extent of treatment, the degree of permanent disability, if any, the prognos and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economical repaired, the claimant should submit at least two itemized signed statements or estima by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable o the property is lost or destroyed, the claimant should submit statements as to the origin cost of the property, the date of purchase, and the value of the property, both before an after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or b two or more competitive bidders, and should be certified as being just and correct.

**(d) Failure to specify a sum certain will render your claim invalid and may result i forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) BACK

EXHIBIT 1 PAGE 3

## SUPPLEMENTAL ANSWER QUESTION # 8

On May 25, 2008 in Whatcom County Washington, US Forest Service Officer J. Smith and Whatcom County Deputy Sheriff Jeremy Freeman were effecting the arrest of a Joshua Lockrem in the Mount Baker- Snoqualmie National Forest for an outstanding arrest warrant for the charge of Minor in Possession of Alcohol. Joshua is the younger brother of Claimant James Lockrem Jr.

After Joshua was secured in J. Smith's vehicle an altercation erupted between Deputy Freeman and James Lockrem Senior. During the altercation Deputy Freeman's K-9 partner Duece, a German Shepherd, was released. Duece was not announced as a police dog and had previously been obscured from sight prior to his arrival into the altercation.

Duece initially bit at the family dog, then turned on Sarah Lockrem before biting onto James Lockrem Senior. James Lockrem Jr. ( Claimant) grabbed Duece off bite and pulled him away from his father and other family members. At this time, Officer J. Smith ordered James Lockrem Jr. to let go of the dog and get on the ground. James Lockrem Jr. immediately complied with J. Smith's order. Once James Lockrem Jr. let go of Duece, Duece immediately began biting James Lockrem Jr. J. Smith did nothing to aid James Lockrem Jr. or stop Duece from biting him.

By arresting James Lockrem Jr. while he was being bit by Duece, J. Smith was negligent in as much as a reasonable law enforcement officer would not have continued to arrest a compliant individual while they are being bitten by a dog. The action and inaction of Officer J. Smith caused and prolonged the injury to Claimant James Lockrem Jr.

WHATCOM COUNTY SHERIFF'S OFFICE - NARRATIVE SUPPLEMENT   PAGE 8 OF 

| OFFENSE DESCRIPTION: | | DATE: | EVENT NUM |
|---|---|---|---|
| Resisting arrest, obstructing a law enforcement officer. | [X] CONT. NARRATIVE<br>[ ] FOLLOW-UP | 5-26-2008 | 08A11106 |

1. Reconstruct incident and describe investigation.
2. Victim's injuries - details and where medical exam occurred.
3. Property damaged - describe and indicate amount of loss.
4. If significant, describe vehicle.
5. Identify undeveloped leads.
6. List statements taken.
7. List persons from whom statements need to be taken later.
8. Physical evidence - detail what and where found, by whom, and disposition

ADDITIONAL COPIES TO:

NARRATIVE:

A1: Joshua LOCKREM   DOB: 06-10-■■   3419 S Ave. Anacortes, WA 98221

1) During the afternoon of May 23rd, 2008, while patrolling the Mount-Snoqualmie National Forest in the Baker Lake Area, in Whatcom County, I observed a campsite off Baker Lake Road, near mile post 23. I observed a subject fishing, and another preparing a fishing pole at the site.

I started hiking down the bank into the campsite to contact the subjects. As I did, a large pitbull-type dog that was unleashed ran up within several inches of me. I advised the subjects in the camp to contain the dog. I th contacted the male subject who was fishing, male subject who was preparing a fishing pole, and a 3rd male subject who was the stated owner of the dog. I asked the subjects who were fishing, or planning to fish, to se their fishing licenses and identification. I also asked for the dog owner's identification.

The subjects were identified as Joshua LOCKREM (fisherman), James LOCKREM JR. (preparing fishing po and Nathan WELCH (dog owner). I briefly spoke to the subjects about regulations while camping on the National Forest, including firearms. The subjects stated they did have firearms in the campsite. In addition, I observed the subjects carrying multiple knives, and multiple edged weapons lying about in their campsite. Th subjects stated they were planning on camping all weekend.

I returned to my vehicle and ran the subjects with Whatcom County Sheriff's Office dispatch. Joshua LOCKREM came back with a misdemeanor probable cause warrant for minor in possession of alcohol. I did not have dispatch confirm the warrant at that time, due to the extended travel time to the jail. Being the first night of the busy holiday weekend at Baker Lake, I felt I needed to remain in the area and patrol. I assumed the subjects would be camping all weekend, and thought I would return to pickup Joshua LOCKREM towards the end of one of my other shifts, later that weekend.

On the afternoon of May 25th, I returned to the Baker Lake area. While patrolling Forest Road 1152, I observed a group of subjects walking down the road. I stopped and talked to the group. I recognized the LOCKREMS, WELCH, and several other male subjects with them whom I did not know. I observed LOCKREM JR. was carrying a handgun. I again briefly spoke to the subjects about shooting regulations on the National Forest. I asked the subjects how long they were planning on camping for, and they told me they were leaving tomorrow.

Around 1800, I contacted Whatcom County Sheriff's Deputy Jeremy FREEMAN, who was working in the area. I advised FREEMAN my shift was going to be ending soon, and I asked if he would accompany me to the LOCKREM'S campsite so I could pickup Joshua LOCKREM for the outstanding warrant. I advised

| REPORTING OFFICER: | REVIEWING OFFICER: |
|---|---|
| J Smith #10A1653, US Forest Service | |

EXHIBIT 1 PAGE 5

| WHATCOM COUNTY SHERIFF'S OFFICE - NARRATIVE SUPPLEMENT | | | PAGE 19 OF 41 |
|---|---|---|---|
| OFFENSE DESCRIPTION: | | DATE: | EVENT NUM |
| Resisting arrest, obstructing a law enforcement officer. | [X] CONT. NARRATIVE<br>[ ] FOLLOW-UP | 5-26-2008 | 08A11106 |

1. Reconstruct incident and describe investigation.
2. Victim's injuries - details and where medical exam occurred.
3. Property damaged - describe and indicate amount of loss.
4. If significant, describe vehicle.
5. Identify undeveloped leads.
6. List statements taken.
7. List persons from whom statements need to be taken later.
8. Physical evidence - detail what and where found, by whom, and disposition

ADDITIONAL COPIES TO:

NARRATIVE:

FREEMAN the subjects had firearms, edged weapons, and dogs in the campsite. At around 1830, FREEMAN and I arrived at the LOCKREM'S campsite off Baker Lake Road, near mile 23.

Upon arrival, I observed a large blue Dodge pickup, with doors both open. The stereo was on, and loud music was playing. I turned down the music, and looked down into the campsite from the bank above. I saw Joshua LOCKREM, and advised him I needed him to come up so I could speak to him. Once he came up, I told him had a warrant for his arrest, and to turn around and put his hands behind his back. LOCKREM immediately began arguing with me, saying he did not have a warrant for his arrest, and that he had a lawyer who had taken care of everything. I again advised LOCKREM to turn around because he was under arrest, and I grabbed his left wrist. LOCKREM immediately tensed up, stiffening his body, and pulled away from me. I tightened my grip and attempted to place a handcuff on his left wrist. LOCKREM was wearing a heavy sweater, and it was difficult getting the cuff on his wrist over the thick sleeves. FREEMAN grabbed LOCKREM'S other wrist to help me get him cuffed. The entire time LOCKREM resisted us, trying to pull away. Additionally, during the entire time LOCKREM began screaming, calling for aide saying, "Help, help, I am being arrested, I don't have warrant."

By the time we were able to get Joshua LOCKREM handcuffed, other members from the campsite had come up the bank. I recognized some of the subjects as LOCKREM JR., and WELCH. Upon seeing LOCKREM handcuffed, all of the subjects were becoming visibly upset, starting to yell, and wanting to know what was going on. FREEMAN and I explained to the subjects that Joshua LOCKREM had a warrant for his arrest. We asked the group members repeatedly to return to their campsite, and we would give them further information. The group members refused to return to their campsite.

During that time, Joshua LOCKREM continued to make the situation worse by yelling to the other subjects he did not have a warrant, he had not been advised Miranda Rights, that he was being unlawfully taken, and that we did not even know who he was. I then began escorting Joshua LOCKREM to my vehicle. LOCKREM refused to walk on his own, resisting, and not moving. Eventually, I was able to get him to my vehicle through a combination of pushing, pulling, and dragging him. I opened my vehicle door and told him to get in. Again, LOCKREM refused, and tensed his body in place. I physically had to force LOCKREM into the vehicle by pushing and wrestling him in. LOCKREM was belligerent the entire time, cursing and yelling obscenities at me. During that time I heard FREEMAN and the other subjects yelling in a confrontation that sounded like it was escalating. I could not respond to aide FREEMAN in a timely manner due to the fact that Joshua LOCKREM had been resisting me the whole time.

| REPORTING OFFICER: | REVIEWING OFFICER: | 19 |
|---|---|---|
| J Smith #10A1653, US Forest Service | | |

WHATCOM COUNTY SHERIFF'S OFFICE - NARRATIVE SUPPLEMENT     PAGE 7o OF 4(

| OFFENSE DESCRIPTION: | | DATE: | EVENT NUMB |
|---|---|---|---|
| Resisting arrest, obstructing a law enforcement officer. | [X] CONT. NARRATIVE<br>[ ] FOLLOW-UP | 5-26-2008 | 08A11106 |

1. Reconstruct incident and describe investigation.
2. Victim's injuries - details and where medical exam occurred.
3. Property damaged - describe and indicate amount of loss.
4. If significant, describe vehicle.
5. Identify undeveloped leads.
6. List statements taken.
7. List persons from whom statements need to be taken later.
8. Physical evidence - detail what and where found, by whom, and disposition

ADDITIONAL COPIES TO:

NARRATIVE:

Once I was able to get Joshua LOCKREM secured in my vehicle, I returned to assist FREEMAN. FREEMAN had attempted to remain in a position between me, and the others, in an effort to allow me to take Joshua LOCKREM into custody safely. I observed subjects from the camp converging on FREEMAN. This includ Nathan WELCH, and James LOCKREM JR., as well as other subjects later identified as James LOCKREM SR., Jarred ZEIGLER, Sarah LOCKREM, and Carol LOCKREM. The subjects were extremely belligerent, vocally loud, yelling obscenities. FREEMAN and I were giving repeated commands to the subjects to return their campsite, and no one was listening. James LOCKREM SR., was in front of the others, getting in FREEMAN'S face. The other subjects were just behind him. I then observed LOCKREM SR. lunge toward FREEMAN. I worked my way into the group to get in between FREEMAN and the others. At that point I observed LOCKREM SR. had a handgun in a holster on his hip. I attempted to secure the weapon from him, but he moved away before I could get it. I turned my attention to the other subjects who were still converging on FREEMAN and I, upset that LOCKREM SR was being subdued. I un-holstered my Taser and pointed it a the other subjects, advising them to stay back and get on the ground. No one in the group complied. I remain n between FREEMAN and the others to keep them at bay while he was attempting to take LOCKREM SR. ir custody.

At that point I saw FREEMAN'S K-9 unit had been released and was taking a bite on LOCKREM JR.'S right arm. I told LOCKREM JR. to get on the ground. LOCKREM JR. eventually did get on the ground. I told LOCKREM JR. put his left wrist behind his back. LOCKREM JR. did not at first, and rolled away from me. again advised him to roll over and put his left arm behind his back. LOCKREM JR. did then, and I handcuffec his left wrist. I looked over to FREEMAN and saw he was handcuffing WELCH and ZEIGLER. When he wa finished, he approached LOCKREM JR. and I, and called the K-9 unit off the bite. I then handcuffed LOCKREM JR.'S right wrist. I then looked over and saw LOCKREM SR. was on the ground, un-handcuffed, and attempting to get up. I advised him to stay on the ground. I went to my truck to get an additional pair of cuffs, and handcuffed LOCKREM SR. Numerous knifes and edged weapons were found on the subjects and secured by FREEMAN and myself.

Sarah LOCKREM, and Carol LOCKREM were not handcuffed, but still in the immediate area. Both refused to go back to their campsite when asked again. Carol LOCKREM was extremely belligerent and continued to shout derogatory comments. 3 other subjects that stayed in the background were later identified as Mandy LOCKREM, Kandye GARNER, and Samson GARNER. Samson GARNER was videotaping the incident, and had started taping around the time LOCKREM SR. had lunged at FREEMAN.

At this point FREEMAN and I checked the dog bite on LOCKREM JR.'S arm. It was visibly bleeding.

| REPORTING OFFICER: | REVIEWING OFFICER: |
|---|---|
| J Smith #10A1653, US Forest Service | |

EXHIBIT 1  PAGE 7

## WHATCOM COUNTY SHERIFF'S OFFICE - NARRATIVE SUPPLEMENT    PAGE 2 OF 4

| OFFENSE DESCRIPTION: | | DATE: | EVENT NUM |
|---|---|---|---|
| Resisting arrest, obstructing a law enforcement officer. | [X] CONT. NARRATIVE<br>[ ] FOLLOW-UP | 5-26-2008 | 08A11106 |

1. Reconstruct incident and describe investigation.
2. Victim's injuries - details and where medical exam occurred.
3. Property damaged - describe and indicate amount of loss.
4. If significant, describe vehicle.
5. Identify undeveloped leads.
6. List statements taken.
7. List persons from whom statements need to be taken later.
8. Physical evidence - detail what and where found, by whom, and disposition

**ADDITIONAL COPIES TO:**

**NARRATIVE:**

FREEMAN took LOCKREM JR. over to his car to provide medical attention and to bandage the wound. FREEMAN confirmed backup units and medical units were in route to our location. I learned LOCKREM S had also been bitten by the K-9. I observed the wound on his arm, and it appeared to be several small punctu wounds that were not bleeding very much. LOCKREM SR. was complaining of discomfort elsewhere. I he LOCKREM SR. sit up. Sarah LOCKREM retrieved a chair and blankets for LOCKREM SR. We sat LOCKREM SR. in the chair, and covered him with blankets. Later, I retrieved an additional pair of handcuf from my vehicle to put in between the handcuffs he was already in. This was done in order to give him additional room, as he is of larger frame and was complaining of discomfort. In addition, Sarah LOCKREM was permitted to retrieve water, milk, and towels for ZEIGLER'S eyes. I found out FREEMAN had deploye his pepper spray on ZEIGLER. ZEIGLER'S eyes were rinsed numerous times. In addition, Sarah LOCKRE stated she had gotten pepper spray in her eyes while helping rinse and clean ZEIGLER'S. I helped rinse Sara LOCKREM'S eyes.

Numerous backup units and medical units then arrived on scene. I confirmed Joshua LOCKREM'S warrant with dispatch. In addition, I then advised him his Miranda Rights, to which he stated he knew and understood and agreed to speak with me. Joshua LOCKREM did have the smell of alcohol on his breath. I asked him if h had been drinking, and he stated he had some beers earlier. I asked him if he would voluntarily give a breath sample to my Portable Breath Test unit. He agreed and at approximately 2030 hours, he registered .054. LOCKREM JR. and SR. were transported to the hospital. Subjects WELCH, ZEIGLER, and Joshua LOCKREM were booked into Whatcom County Jail. I transported and booked Joshua LOCKREM. During th drive, LOCKREM stated we had "ruined his weekend," and asked why I have to take him to jail for the warrant He further stated he would have taken care of it on his own if I would have just told him about it. He also asked me if law enforcement officers like myself ever "backed down" when challenged by others. LOCKREM was booked and charged with obstructing a law enforcement officer and resisting arrest.
*Additional recommended charge: Minor in possession of alcohol.*

I certify (or declare) under penalty of perjury under the laws of the state of Washington that the foregoing and the accompanying report/copies of documents and the information contained therein are true, correct, and accurate. (RCW 9A.72.085.)

| United States Forest Service | | | 5/26/08 |
|---|---|---|---|
| Law Enforcement Agency | ORI (9 digit) | Officer's Signature | Date Signed |
| | | Jeremy Smith | #10A1653 |
| | | Printed Name of Officer | Badge Number |

| REPORTING OFFICER: | REVIEWING OFFICER: |
|---|---|
| J Smith #10A1653, US Forest Service | |

EXHIBIT 1 PAGE 8

# AFFIDAVIT OF SERVICE

STATE OF WASHINGTON  )
                     ) ss.
COUNTY OF WHATCOM    )

Irene M. Gray, on oath, under penalty of perjury, in the State of Washington says:

I am over the age of eighteen and competent to testify as follows:

I am currently the Legal Assistant for Robert D. Butler of the Law Offices of Robert D. Butler, attorney of record for James Lockrem Jr.

1. On Friday, October 9, 2009 I deposited in the mails of the United States of America a properly-stamped and addressed envelope directed to:

    US FOREST SERVICE
    810 State Route 20
    Sedro Woolley, WA 98284

    Containing the following documents: Claim for Damages, Police Reports consisting of 4 pages, and a CD video of the event.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

SIGNED at Bellingham, Washington, this __12th__ day of October, 2009

_____
Irene M. Gray
Legal Assistant to Robert D. Butler

AFFIDAVIT OF SERVICE - 1
092G2110.203

Law Offices of
ROBERT D. BUTLER

EXHIBIT 1 PAGE